IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| SARAH DICKEY,<br><br>　　Plaintiff,<br><br>v.<br><br>MAHASKA HEALTH PARTNERSHIP; KEVIN DERONDE; DAVID CORNELDER; TIMOTHY BREON; DAVID LANGKAMP; AMBER COFFEY; GREG GORDY; and MARSHA RIORDAN,<br><br>　　Defendants. | CASE No. 4:23-cv-00193<br><br>**COMPLAINT<br>AND JURY DEMAND** |

COMES NOW Plaintiff Sarah Dickey, by and through counsel, and for her causes of action against Mahaska Health Partnership, Kevin DeRonde, David Cornelder, Timothy Breon, David Langkamp, Amber Coffey, Greg Gordy, and Marsha Riordan states as follows:

### INTRODUCTION

1.　This is an action under and pursuant to the Iowa Civil Rights Act ("ICRA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), the Americans with Disabilities Act ("ADA"), and 42 U.S.C. §1983.

2.　Under ICRA, Title VII, ADEA, ADA, and/or 42 U.S.C. §1983 (providing a cause of action under the Equal Protection Clause of the United States Constitution), Plaintiff is protected from discriminatory practices based on her sex, age, disability, and religion, as well as against retaliation for opposing discriminatory conduct.

### PROCEDURAL REQUIREMENTS

3.　Plaintiff Dickey filed her sex, age, disability, and religion discrimination

1

complaint, and complaint of retaliation, with the Iowa Civil Rights Commission on August 16, 2022, within the 300-day limitations period from the last discriminatory act alleged.

4. On March 15, 2023, less than ninety days prior to the filing of this Complaint, the Iowa Civil Rights Commission issued a Right to Sue Letter.

5. On February 7, 2023, Plaintiff, through Counsel, submitted a request to the U.S. Equal Opportunity Commission for a Right to Sue Letter.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. § 1331 as this is a civil action arising under federal law and pendent jurisdiction of the state claims under 28 U.S.C. § 1367.

7. Venue in the Southern District Court in Iowa is proper under 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to this claim occurred in Mahaska County, Iowa.

8. The unlawful acts of which Plaintiff complains occurred in Mahaska County, Iowa.

## PARTIES

9. Plaintiff Sarah Dickey is female, 45-years-old, disabled, Catholic, and all times material hereto, was a citizen and resident of Mahaska County, Iowa.

10. At all times material hereto, Defendant Mahaska Health Partnership (hereafter, "MHP") was/is a county hospital organized and existing under the laws of the State of Iowa, with its principal place of business in Oskaloosa, Mahaska County, Iowa. Defendant MHP is governed by a Board of Trustees elected from the surrounding county.

11. At all times material hereto, Defendant David Cornelder, D.O. was/is a citizen and resident of Polk and was employed by Defendant MHP as an Emergency Room Physician

and Medical Director.

12. At all times material hereto, Defendant Timothy Breon, M.D. was/is a citizen and resident of Mahaska County, Iowa and the Chief Medical Officer of Defendant MHP.

13. At all times material hereto, Defendant Kevin DeRonde was a citizen and resident of Mahaska County, Iowa and the Chief Executive Officer of Defendant MHP.

14. At all times material hereto, Defendant David Langkamp was/is a citizen and resident of Mahaska County, Iowa and served as the President of the Mahaska Health Board of Trustees.

15. At all times material hereto, Defendant Amber Coffey was/is a citizen and resident of Mahaska County, Iowa and served as a Board Member of the Mahaska Health Board of Trustees.

16. At all times material hereto, Defendant Greg Gordy was/is a citizen and resident of Mahaska County, Iowa and served as a Board Member of the Mahaska Health Board of Trustees.

17. At all times material hereto, Defendant Marsha Riordan was/is a citizen and resident of Mahaska County, Iowa and served as the Vice-President of the Mahaska Health Board of Trustees.

18. Under the doctrine of *respondeat superior*, Defendant MHP is legally liable for any damages caused to Plaintiff by the conduct of Defendants DeRonde, Cornelder, Breon, Langkamp, Coffey, Gordy, and/or Riordan, or in the alternative, under the principles of ostensible agency, Defendant MHP is legally liable for any damages caused to Plaintiff by the conduct of Defendants DeRonde, Cornelder, Breon, Langkamp, Coffey, Gordy, and/or Riordan.

**FACTUAL BACKGROUND**

19. Plaintiff Dickey began working for Defendant MHP on March 19, 2018, as Executive Director of Human Resources ("HR").

20. Plaintiff worked for Defendant MHP as Executive Director of HR from March 19, 2018, until sometime in 2020, thereafter holding the position of Chief HR Officer until January 3, 2022.

21. Both positions Plaintiff held at MHP were functionally the same.

22. Defendant MHP, and its administration including Defendants Breon, DeRonde, and Cornelder, have a history of taking discriminatory acts against female employees and those that do not share their religious faith which inform their political views. Their goal was to replace the current female employees with male employees who share their religious beliefs and political opinions.

23. Defendant DeRonde was appointed CEO of Defendant MHP in February 2018.

24. Defendant DeRonde was Plaintiff's immediate supervisor.

25. DeRonde frequently requested Plaintiff be submissive and vulnerable to him.

26. Plaintiff received many disparaging remarks from Defendant DeRonde regarding her sex, disability, and age.

27. In 2019, Dr. Amy Montgomery, then currently serving as the director of the emergency department, resigned during the negotiations to renew her contract with Defendant MHP after Defendant MHP failed to negotiate in good faith. During this period, Defendant DeRonde began manufacturing complaints about Dr. Montgomery's work performance with the goal of undermining her contract negotiations.

28. In March of 2020, Defendant MHP hired Defendant David Cornelder with the

stated intent to "provide some leadership" and "fix" the Emergency Medicine Department. There was no indication "leadership was lacking" or that the Emergency Department needed to be "fixed".

29. Prior to Defendant Cornelder's hiring to "fix" the department, Plaintiff Dickey was never told of any concerns the administration had with the emergency department.

30. In October 2021, the Emergency Medicine Department at Defendant MHP had five physicians: Suzy Roefer, DO (female), Deborah Nielsen-DeJong, MD (female), Kymberly Life, DO (female), Amanda Moreno, DO (female), and the recently hired Defendant Cornelder, DO (male).

31. On October 1, 2021, Drs. Life, Moreno, and Nielson-DeJong received termination notices from Defendant MHP, stating their employment contracts would end on December 31, 2021.

32. Dr. Roefer, already planning to retire was railroaded into declaring a firm retirement date in February 2022.

33. Defendant Cornelder, the most recently hired and sole male physician, did not receive a termination notice.

34. Defendant Breon also mistreated and discriminated against most of the female Certified Registered Nurse Anesthetists.

35. In place of the terminated female physicians, Defendants MHP, Cornelder, Breon, and DeRonde hired a male general surgeon (Dr. Chris Martin) without emergency room experience.

36. Dr. Amanda Moreno and others warned Defendants Breon and DeRonde that Dr. Martin was unqualified to be an emergency room physician and posed a serious danger to

patients.

37. When Defendant MHP and its administration interviewed Dr. Martin, the female physicians were not aware he would replace them. Rather, they were told that Defendant MHP were just looking for someone to replace Dr. Suzy Roefer when she retired.

38. Defendants Breon and Martin originally wanted to pay Dr. Martin *more* than his female physician colleagues but were warned against doing so by Plaintiff.

39. Prior to Defendant DeRonde informing Defendant MHP's Board of Trustees, including Defendants Langkamp, Riordan, Gordy, and Coffey, of the termination or retirement of Drs. Roefer, Nielsen-DeJong, Life, and Moreno, he had already obtained contracts to replace them.

40. Defendants Langkamp, Riordan, Gordy, and Coffey accepted and confirmed Defendant DeRonde's discriminatory treatment of Plaintiff.

41. After community backlash for the terminations, Defendant MHP's Board of Trustee's, including Defendants Langkamp, Riordan, Gordy, and Coffey, called Defendant DeRonde before them to explain why there was a mass firing of female emergency room physicians and why new hires did not seem to have the appropriate qualifications for their jobs. Defendant DeRonde then submitted his resignation, and the Board accepted it. There were also concerns raised that Defendant DeRonde was having an intimate relationship with another employee and also hired his wife for a position for which she was not qualified.

42. The day the board accepted Defendant DeRonde's resignation, Defendant Breon burst into a boardroom meeting between interim CEO Gene Williamson and Plaintiff to yell at them for not informing him about DeRonde's termination decision.

43. Plaintiff asked to leave the boardroom to use the restroom, but Defendant Breon

stood in her way and told her to sit down so he could ask more questions.

44. Plaintiff Dickey cooperated with the Board's investigation of Defendant DeRonde, expressing concern over the termination of the female physicians to Defendant Langkamp, sharing her belief it was discrimination based on sex.

45. A petition to reinstate Defendant DeRonde was circulated, a campaign pushed by Defendants Breon and Langkamp, and Defendants Langkamp, Coffey, Gordy, and Riordan voted to reinstate Defendant DeRonde as CEO despite his continuous and illegal discriminatory conduct.

46. Three Board of Trustee members, Jim Hansen, Margaret Ratcliff, and Amy McGriff submitted their resignations in response to Defendant DeRonde's reinstatement.

47. Jim Hansen warned Plaintiff she would face a hostile environment for her cooperation in the investigation of Defendant DeRonde.

48. In her resignation letter, Ratcliff expressed concerns regarding unethical practices that were not in the best interests of Defendant MHP. It is attached and made a part hereof.

49. Hansen's resignation letter mirrored Ratcliff's concerns and discussed unfair and irresponsible hiring and termination practices of Defendant MHP and its leadership team. It is attached and made a part hereof.

50. McGriff's resignation letter mentioned the uncovering of disturbing abuses within the organization. It is attached and made a part hereof.

51. All three resignation letters reminded Defendants to bear in mind that MHP is a public hospital and an Equal Opportunity Employer, therefore employers should be treated fairly, and procedures and policies must be followed.

52. Plaintiff took a leave under the Family Medical Leave Act on October 18, 2021,

due to her panic and anxiety attacks following these actions.

53. During her leave Plaintiff sought treatment for her panic and anxiety attacks at the University of Iowa's Clinic, hoping to keep her treatments private from Defendants.

54. However, Defendant MHP had access to Plaintiff's personal medical records after setting up a patient portal for her through Epic Systems in March 2021, the same service, the University of Iowa's Clinic also uses to manage patient records.

55. Anyone with access to Plaintiff's personal medical records through Epic Systems could see she visited the University of Iowa's clinic, that her visit related to panic and anxiety attacks, and Defendant DeRonde was listed among the potential causes of her attacks.

56. Defendants DeRonde and Breon often spoke about religion and pushed their religious ideas and practices onto employees. Their religious beliefs informed their political ideology.

57. They would "testify" at executive team member meetings and speak with employees and patients about religion. During one of the meetings, these Defendants told the entire executive team that they were chosen by the hand of God to lead the hospital.

58. Defendant Breon requested that Plaintiff Dickey share her "testimony" with him. She said that conversation was inappropriate for work, but he continued to share his own "testimony" with her.

59. Plaintiff is Catholic.

60. Defendant Breon is non-Catholic.

61. Defendant Breon has insisted on praying with patients while laying his hands upon them, two of whom complained to Dr. Amanda Moreno.

62. At a leadership meeting, these Defendants created a PowerPoint presentation

about why the attending members needed to vote for Donald Trump, a political partisan consistent with their religious beliefs.

63. On January 3, 2022, Plaintiff Dickey returned to work with her FMLA release, reporting first to MHP Director of Occupational, Employee, and Public Health, Arthur Zacharjasz for a standard return-to-work visit.

64. Zacharjasz asked Plaintiff if she needed any accommodations in a manner, indicating something about her return-to-work visit was awry.

65. Zacharjasz told Plaintiff she could not fully return to work and needed to contact Defendant Breon, something never required for other employees to return to work.

66. When Plaintiff met with Defendant Breon, he informed her a decision was made to eliminate her position effective immediately.

67. Defendant Breon refused to hear any questions from Plaintiff about eliminating her position, only offering "Many blessings" to close the encounter.

68. Defendants unjustifiably terminated Plaintiff's employment.

69. Immediately following their termination of Plaintiff, Defendants began to advertise her position was open to applicants.

70. Plaintiff Dickey has been harassed, belittled, reprimanded, humiliated, excluded, terminated, and retaliated against all because she is a woman, a Catholic, over forty years of age, and disabled.

**COUNT I – DISCRIMINATION ON THE BASIS OF SEX, AGE, DISABILITY, AND RELIGION AND RETATALIATION IN VIOLATION OF IOWA CODE CHAPTER 216 AGAINST ALL DEFENDANTS**

71. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 – 70 above.

9

72. Plaintiff Dickey is a female, a Catholic, over forty years old, and disabled and is a member of protected classes under the Iowa Civil Rights Act, Iowa Code Chapter 216.

73. Defendants discriminated against Plaintiff Dickey with respect to the terms and conditions of her employment based on her sex, age, disability, and religion in violation of Iowa Code Chapter 216, as set forth above.

74. Defendants engaged in a continuing pattern and practice of sex, age, disability, and religious discrimination in violation of the Iowa Civil Rights Act, Iowa Code Section 216.6.

75. Plaintiff Dickey's sex, age, disability, and religion were motivating factors in the discrimination.

76. Defendants discriminated against Plaintiff Dickey and other female employees, as set forth above, in violation of Iowa Code Section 216.6.

77. Plaintiff Dickey opposed and otherwise complained about this discrimination.

78. Defendants retaliated against Plaintiff Dickey by further discriminating against her, disciplining her, and terminating her.

79. Plaintiff Dickey's complaints of discrimination were a motivating factor in Defendants' retaliation against her.

80. The Defendants' violations of Iowa Code Chapter 216 are the cause of Plaintiff Dickey's injuries.

81. As a result of the Defendants' actions, Plaintiff Dickey has suffered, and will continue to suffer, past and future loss of wages, benefits, and other emoluments of employment, past and future mental and emotional harm and anguish, anxiety, fear, loss of enjoyment of life, and other damages.

WHEREFORE, Plaintiff Dickey prays for the following relief:

a) That Defendants' conduct be declared to be in violation of Plaintiff's rights as outlined by Iowa Code Chapter 216;

b) That Defendants and their employees, agents, attorneys, successors and assigns, and those acting in concert therewith be enjoined from any conduct violating Plaintiff's rights or the rights of others similarly situated as secured by Chapter 216 of the Iowa Code, and that the Court order such other injunctive relief as necessary to prevent Defendants from continuing their discriminatory practices and to protect others similarly situated;

c) That Plaintiff be awarded compensatory damages;

d) That Plaintiff be made whole by providing her compensation for the past and future mental and emotional harm and anguish, and other affirmative relief;

e) That Plaintiff be awarded reasonable attorneys' fees and costs incurred in prosecuting this action; and

f) That Plaintiff be awarded such additional and further relief as is just and proper.

### COUNT II – SEX AND RELIGION DISCRIMINATION AND RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AGAINST ALL DEFENDANTS

81. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 – 70, above.

82. Section 703(a) of Title VII of the Civil Rights Act of 1964, as amended, prohibits employers from discriminating against an employee because of such individual's religion or sex.

83. Plaintiff Dickey experienced discrimination based on her sex and religion as set forth above.

84. Plaintiff's sex and religion were motivating factors in the discrimination.

85. Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, prohibits

employers from discriminating against an employee "because [she] has opposed any practice made an unlawful employment practice by this subchapter."

86. Plaintiff Dickey complained about sex and religion discrimination she experienced and otherwise opposed practices made unlawful by Title VII of the 1964 Civil Rights Act as set forth above.

87. Defendants, their agents, and/or employees retaliated against Plaintiff Dickey because of her sex and religion and because of her complaints opposing discrimination.

88. The Defendants' violations of Title VII of the 1964 Civil Rights Act are the cause of Plaintiff Dickey's injuries.

89. As a result of the Defendants' actions, Plaintiff Dickey has suffered, and will continue to suffer, past and future loss of wages, benefits, and other emoluments of employment, past and future emotional distress, anxiety, fear, loss of enjoyment of life, and other damages.

90. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's federally protected rights.

WHEREFORE, Plaintiff Dickey prays for the following relief:

a) That Defendants' conduct be declared to be in violation of Plaintiff's rights as outlined by Title VII of the 1964 Civil Rights Act;

b) That Defendants and their employees, agents, attorneys, successors and assigns, and those acting in concert therewith be enjoined from any conduct violating Plaintiff's rights or the rights of others similarly situated as secured by Title VII of the 1964 Civil Rights Act, and that the Court order such other injunctive relief as necessary to prevent Defendants from continuing their discriminatory practices and to protect others similarly situated;

c) That Plaintiff be awarded compensatory damages;

d) That Plaintiff be made whole by providing her compensation for the past and future emotional distress, and other affirmative relief;

e) That Plaintiff be awarded punitive damages in an amount sufficient to punish Defendants and to deter them and others from similar conduct in the future;

f) That Plaintiff be awarded reasonable attorneys' fees and costs incurred in prosecuting this action; and

g) That Plaintiff be awarded such additional and further relief as is just and proper.

**COUNT III - VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 (ADEA), 29 U.S.C. § 621, *et seq.* AGE DISCRIMINATION**

91. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 – 70, above.

92. Plaintiff was within the protected age group defined by the Age Discrimination in Employment Act.

93. Plaintiff Dickey experienced discrimination based on her age as set forth above.

94. Plaintiff's age was a motivating factor in the discrimination.

95. The Defendants' violations of the ADEA are the cause of Plaintiff Dickey's injuries.

96. As a result of the Defendants' actions, Plaintiff Dickey has suffered, and will continue to suffer, past and future loss of wages, benefits, and other emoluments of employment, past and future emotional distress, anxiety, fear, loss of enjoyment of life, and other damages.

97. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's federally protected rights.

WHEREFORE, Plaintiff Dickey prays for the following relief:

a) That Defendants' conduct be declared to be in violation of Plaintiff's rights as outlined by the ADEA;

b) That Defendants and their employees, agents, attorneys, successors and assigns, and those acting in concert therewith be enjoined from any conduct violating Plaintiff's rights or the rights of others similarly situated as secured by the ADEA, and that the Court order such other injunctive relief as necessary to prevent Defendants from continuing their discriminatory practices and to protect others similarly situated;

c) That Plaintiff be awarded liquidated damages;

d) That Plaintiff be awarded reasonable attorneys' fees and costs incurred in prosecuting this action; and

e) That Plaintiff be awarded such additional and further relief as is just and proper.

**COUNT IV - VIOLATION OF THE AMERICANS WITH DISABILITIES ACT DISABILITY DISCRIMINATION AND RETALIATION**

98. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 – 70, above.

99. Plaintiff was disabled within the meaning of the Americans with Disabilities Act.

100. Plaintiff Dickey experienced discrimination based on her disability as set forth above.

101. Plaintiff's disability was a motivating factor in the discrimination.

102. The Defendants' violations of the ADA are the cause of Plaintiff's injuries.

103. As a result of the Defendants' actions, Plaintiff has suffered, and will continue to suffer, past and future loss of wages, benefits, and other emoluments of employment, past and future emotional distress, anxiety, fear, loss of enjoyment of life, and other damages.

104. Defendants' unlawful actions were intentional, willful, malicious, and/or done

with reckless disregard to Plaintiff's federally protected rights.

WHEREFORE, Plaintiff Dickey prays for the following relief:

a) That Defendants' conduct be declared to be in violation of Plaintiff's rights as outlined by the ADA;

b) That Defendants and their employees, agents, attorneys, successors and assigns, and those acting in concert therewith be enjoined from any conduct violating Plaintiff's rights or the rights of others similarly situated as secured by the ADA, and that the Court order such other injunctive relief as necessary to prevent Defendants from continuing their discriminatory practices and to protect others similarly situated;

c) That Plaintiff be awarded compensatory damages;

d) That Plaintiff be made whole by providing her compensation for the past and future emotional distress, and other affirmative relief;

e) That Plaintiff be awarded punitive damages in an amount sufficient to punish Defendants and to deter them and others from similar conduct in the future;

f) That Plaintiff be awarded reasonable attorneys' fees and costs incurred in prosecuting this action; and

g) That Plaintiff be awarded such additional and further relief as is just and proper.

**COUNT V – VIOLATION OF THE EQUAL PROTECTION CLAUSE
OF THE UNITED STATES CONSTITUTION
AGAINST ALL DEFENDANTS**

105. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 – 70, above.

106. Defendants intentionally discriminated against Plaintiff because of her sex, age, and religion as set forth above.

107. Defendants are state actors for purposes of 42 U.S.C. 1983, and their actions, outlined above, were taken under the color of state law.

108. Defendants, through their agents, servants, and employees in their official capacities, established a policy, regulation, official decision, custom, or usage of reckless or deliberate indifference to the rights of Plaintiff.

109. Defendants established, maintained, and enforced policies, regulations, official decisions, or usages which unconstitutionally deprived Plaintiff of her rights guaranteed by the Equal Protection Clause to the United States Constitution.

110. Defendants deprived Plaintiff of the rights guaranteed to her under the Equal Protection Clause of the United States Constitution in violation of 42 U.S.C. § 1983.

WHEREFORE, Plaintiff Dickey prays for the following relief:

a) That Defendants' conduct be declared to be in violation of Plaintiff's rights as outlined by the Equal Protection Clause of the United States Constitution;

b) That Defendants and their employees, agents, attorneys, successors and assigns, and those acting in concert therewith be enjoined from any conduct violating Plaintiff's rights or the rights of others similarly situated as secured by the Equal Protection Clause of the United States Constitution, and that the Court order such other injunctive relief as necessary to prevent Defendants from continuing their discriminatory practices and to protect others similarly situated;

c) That Plaintiff be awarded compensatory damages;

d) That Plaintiff be made whole by providing her compensation for the past and future emotional distress, and other affirmative relief;

e) That Plaintiff be awarded punitive damages in an amount sufficient to punish Defendants

and to deter them and others from similar conduct in the future;

f) That Plaintiff be awarded reasonable attorneys' fees and costs incurred in prosecuting this action; and

g) That Plaintiff be awarded such additional and further relief as is just and proper.

## JURY DEMAND

Plaintiff Dickey hereby demands a trial by jury of all the issues arising out if the matters pled herein.

*/s/ Devin C. Kelly*
ROXANNE CONLIN AT0001642
DEVIN C. KELLY AT0011691
ROXANNE CONLIN & ASSOCIATES, P.C.
3721 SW 61st Street, Suite C
Des Moines, IA  50321-2418
Phone: (515) 283-1111; Fax: (515) 282-0477
Email: roxanne@roxanneconlinlaw.com
           dkelly@roxanneconlinlaw.com
       cc: dpalmer@roxanneconlinlaw.com
ATTORNEYS FOR COMPLAINANT